IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02418-PAB-KMT

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

HARTMAN WRIGHT GROUP, LLC, and
TYTUS W. HARKINS,

     Defendants.

---

## ORDER ACCEPTING MAGISTRATE JUDGE'S RECOMMENDATION

---

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 35] filed on November 30, 2020. The magistrate judge recommends that the Court grant the Securities and Exchange Commission's ("SEC") Motion for Summary Judgment on Section 5 Claim [Docket No. 27]. Defendant Tytus W. Harkins ("Harkins") timely objected to the recommendation.[1] Docket No. 41. Defendant Hartman Wright Group, LLC ("HWG"), which has not retained counsel in this matter, did not object to the recommendation.[2]

---

[1] The Court granted Mr. Harkins, who is representing himself, additional time to submit his objections. Docket No. 40.

[2] The magistrate judge explained that, because HWG has not retained counsel and cannot represent, it has failed to appear. Docket No. 35 at 1 n.1. As such, the magistrate judge deemed the SEC's well-pled allegations against HWG admitted under Rule 8(b)(6) of the Federal Rules of Civil Procedure. *Id.*

## I. BACKGROUND[3]

HWG offered and sold loan participations, "6&25" investments, and corporate notes (collectively, the "HWG Instruments") without filing a registration statement with the SEC.  Docket No. 27 at 6, ¶¶ 3, 5.  Mr. Harkins is the owner and managing member of HWG, and he prepared prospectuses and marketing materials and solicited investors, including non-accredited investors.  *Id.*, ¶¶ 2, 6.

As to the loan participations, HWG made a loan to a limited liability company created to own a mobile home park.  *Id.* at 7, ¶ 9.  The loan was secured by a lien on the mobile home park and was reflected by a promissory note that provided HWG the right to repayment with interest.  *Id.*  HWG then offered investors a *pro rata* share of HWG's interest in the promissory note and gave investors the right to repayment of the principal and interest and the lien on the property.  *Id.*, ¶ 10.  HWG offered and sold over $5 million worth of loan participations to 20 investors, who expected to receive profits based on HWG's improvements to the properties, as the loan participations were offered to raise money for maintenance and capital improvements in the mobile home parks.  *Id.*, ¶¶ 12–14.  The loan participations were offered using general solicitation,

---

[3] The following facts are undisputed unless otherwise indicated.  Mr. Harkins did not admit or deny any of the facts set forth in the SEC's statement of undisputed material facts.  Therefore, these facts are deemed admitted.  *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."); *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("Any party opposing the motion for summary judgment shall . . . admit or deny the asserted material facts set forth by the movant.  The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering.  Any denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial.").

2

including through mailing lists, finders, seminars, and HWG's public website. *Id.*, ¶ 15.[4]

As to the 6&25 investments, HWG raised money from investors for general business purposes and to finance and "rehab" mobile home parks. *Id.* at 8, ¶ 18. In exchange, HWG signed promissory notes, promising to pay annual returns of 6% on the amount invested and conveying a 25% ownership interest in an entity that HWG said would generate profit. *Id.*, ¶ 19. Sales of the 6&25 investments netted nearly $1.8 million from four investors. *Id.*, ¶ 20. HWG described the 6&25 investments as an "investment." *Id.*, ¶ 23. HWG marketed the 6&25 investments to the general public by offering and selling the notes through mailing lists, finders, seminars, and HWG's public website. *Id.*, ¶ 22.[5]

HWG offered corporate notes to raise money for the general use of its business and to increase its cash reserves. *Id.* at 9, ¶ 26. These investments paid 7.2%

---

[4] Mr. Harkins purports to dispute this fact and states that the loans were "NOT sold by mailing lists, finders, etc." and that seminars "dealt strictly with how-tos and strategies regarding commercial real estate investment." Docket No. 32 at 3. Rather, Mr. Harkins states, "[t]hese loans were presented to folks that the defendants knew or that were introduced to it by current lenders." *Id.* This statement therefore appears to be a response concerning to whom, rather than how, the loan participations were marketed. Moreover, Mr. Harkins does not dispute the use of HWG's public website. *Id.* Nor does he support his denial with a "**specific reference** to the material in the record." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv. The Court therefore deems this fact as admitted.

[5] As with the loan participations, while Mr. Harkins purports to dispute this fact, his statement that "[t]hese loans were presented to folks that the defendants knew or that were introduced to it by current lenders," Docket No. 32 at 3, concerns to whom the loan participations were marketed, rather than the means by which they were offered. Moreover, Mr. Harkins does not dispute the use of HWG's public website. *Id.* Nor does he support his denial with a "**specific reference** to the material in the record." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv. The Court therefore deems this fact as admitted.

annually, and HWG raised at least $1.5 million through sale of the corporate notes. *Id.*, ¶¶ 27–28.  The corporate notes were also sold in general solicitation, including using finders and seminars.  *Id.*, ¶ 30.[6]  HWG marketed the corporate notes in prospectuses and presentations as investments in securities,[7] and each promissory note agreement stated, "THE SECURITIES OFFERED PURSUANT HERETO ARE SECURITIES AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933."  *Id.*, ¶ 31.

The SEC seeks summary judgment against defendants on its third claim against defendants for violating Section 5 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77a *et seq.*, which makes it unlawful for a person or entity to directly or indirectly offer or sell a security by means of interstate commerce without an SEC registration statement that has been filed or is in effect.  Docket No. 27 at 10.

The magistrate judge recommends granting the SEC's motion.  Docket No. 35 at 1.  Mr. Harkins objected on December 15, 2020.  Docket No. 41.  The SEC responded on January 5, 2021.  Docket No. 42.  Mr. Harkins did not reply.  As stated above, HWG did not object to the recommendation.

## II.  LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's

---

[6] Mr. Harkins purports to deny this fact, but only states that the notes were "sold to existing participants."  Docket No. 35 at 3.  As with the other HWG Instruments, he does not support his denial with a "**specific reference** to the material in the record." *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv.  The Court therefore deems this fact as admitted.

[7] Mr. Harkins appears to concede that the corporate notes were securities, as he states, "[t]o the extent these loans were or were not securities, the defendant's [sic] believed they were doing right."  Docket No. 35 at 3.

disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

## III. ANALYSIS

### A.  Tytus Harkins

Section 5 of the Securities Act prohibits any person from directly or indirectly offering or selling any security by means of interstate commerce without a filed or effective registration statement.  *See* 15 U.S.C. §§ 77e(a), (c).  To establish a *prima facie* violation of Section 5, the SEC must show (1) the offer or sale of a security (2) without a valid registration statement by (3) the use of the mails or facilities of interstate commerce.  *SEC v. Mahabub*, 343 F. Supp. 3d 1022, 1039 (D. Colo. 2018) (citing *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972)).  Section 5 does not have a scienter requirement, but rather imposes strict liability.  *See Aaron v. SEC*, 446 U.S. 680, 714 n.5 (1980); *Anastasi v. Am. Petrol., Inc.*, 579 F. Supp. 273, 274 (D. Colo. 1984) (citing *Swenson v. Engelstad*, 626 F.2d 421, 424 (5th Cir. 1980)).  In addition, "[t]he use of intermediaries between the seller and purchaser does not limit liability." *SEC v. Parrish*, No. 11-cv-00558-WJM-MJW, 2012 WL 4378114, at *4 (D. Colo. Sept. 25, 2012) (citing *SEC v. Wolfson*, 539 F.3d 1249, 1261 n.19 (10th Cir. 2008)).  After the

SEC has established *prima facie* liability, the burden shifts to the defendant to show

that an exemption from Section 5's registration requirement applies. *Busch v.*

*Carpenter*, 827 F.2d 653, 656 (10th Cir. 1987) (citing *SEC v. Ralston Purina Co.*, 346

U.S. 119, 126 (1953)).

The magistrate judge states that, in his response to the SEC's motion for

summary judgment, Mr. Harkins did not dispute that the HWG Instruments were

unregistered, that defendants offered and sold the HWG Instruments in interstate

commerce, and that Mr. Harkins was a substantial factor in the offer or sale of the HWG

Instruments. Docket No. 35 at 6–7 (citing Docket No. 32 at 3). Instead, in responding

to the SEC's motion, Mr. Harkins only disputed whether the HWG Instruments were

securities and, thus, whether registration was required. *Id.* at 7 (citing Docket No. 32 at

1–3). The magistrate judge determined that the HWG Instruments were securities and

were not exempt from registration. Docket No. 35 at 17. Therefore, the magistrate

judge recommends granting the SEC's motion because the SEC established a *prima*

*facie* violation of Section 5 and Mr. Harkins did not met his burden to demonstrate that

a claimed exemption from the registration requirement applies. *Id.*

Mr. Harkins makes a series of objections to the magistrate judge's

recommendation. First, he objects that the HWG Instruments were not offered or sold

in interstate commerce. Docket No. 41 at 3. Second, he objects that the loan

participations and 6&25 investments were not securities because they are not notes

and "WERE backed by mortgages in real property!" *Id.* at 8–12. Third, he argues that

"any matters claimed or granted as securities are in fact shown to be executed by

accredited and sophisticated investors" and therefore did not require registration under Section 5.  *Id.* at 2.

### 1.  Whether the HWG Instruments were Offered or Sold in Interstate Commerce

As to Mr. Harkins's first argument, the magistrate judge recommended that the SEC's motion be granted in part because Mr. Harkins did not "appear to dispute that means of interstate commerce were used in connection with the offer and sale of HWG Instruments" or that Mr. Harkins, "personally, was a 'substantial factor' in the offer and sale of the HWG Instruments."  Docket No. 35 at 7.  Therefore, the magistrate judge determined, "[w]hether the SEC has established a *prima facie* violation of Section 5 . . . depends exclusively upon whether the HWG Instruments" are securities.  *Id.*

Mr. Harkins now objects that the SEC has not met its burden on the interstate commerce element and argues that the SEC has "merely made a statement" that defendants sold the HWG Instruments in interstate commerce that "has been taken as granted by the [r]ecommendation."  Docket No. 41 at 3.  Mr. Harkins claims that the SEC cannot rely on "HWG using the internet, etc., in its advertising."  *Id.* at 4.  He also insists that HWG "operates its transactions NOT between states, but only within states" and, therefore, HWG did not offer or sell the HWG Instruments in interstate commerce. *Id.*  In response, the SEC argues that this interstate commerce argument was first raised in Mr. Harkins's objections, rather than in his response to the SEC's motion for summary judgment, and, thus, the Court should consider it waived.  Docket No. 42 at 2.

The Court agrees with the magistrate judge and the SEC.  First, because Mr. Harkins did not argue in his response that neither he nor HWG offered or sold the HWG

Instruments in interstate commerce, he cannot now raise that argument in his objections and claim that there is a genuine dispute of material fact on the issue. "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020) (unpublished).

Second, even if Mr. Harkins had not waived this argument, the Court would still accept the magistrate judge's recommendation.  One of the SEC's statements of undisputed fact is that Mr. Harkins and HWG offered and sold the HWG Instruments in general solicitation, through mailing lists, finders, seminars, and HWG's public website. Docket No. 27 at 6, 8, 9, ¶¶ 4, 22, 30.  When Mr. Harkins did not deny this fact in his response to the SEC's motion, the fact was deemed admitted.  Fed. R. Civ. P. 56(e); *see also Wagner-Harding v. Farmland Indus. Inc. Employee Ret. Plan*, 26 F. App'x 811, 812 (10th Cir. 2001) (unpublished); *see also* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.F.3.b.iv ("[a]ny denial shall be accompanied by a **brief** factual explanation of the reason(s) for the denial and a **specific reference** to material in the record supporting the denial"); *id.* § III.F.3.b.ix ("[f]ailure to follow these procedures may result in an order striking or denying the motion or brief or may cause the Court to deem certain facts as admitted").  Even if this fact were disputed, however, the Court does not find the dispute to be genuine, as Mr. Harkins testified at his deposition that HWG sent postcards via direct mail to potential investors based on a mailing list "from some service."  *See* Docket No. 27-5 at 5–6, 88:19–89:7.  A

reasonable jury, presented with this testimony, could not find that Mr. Harkins did not offer or sell the HWG Instruments in interstate commerce.  *See Allen*, 119 F.3d at 839.  Thus, even if Mr. Harkins had not waived this argument and even if the Court did not deem the facts as admitted, on de novo review, the Court would overrule his objection because he is mistaken that the use of phones, email, the internet, and mail is not sufficient to show the offer or sale in interstate commerce.  *Kerbs v. Fall River Indus., Inc.*, 502 F.2d 731, 737–38 (10th Cir. 1974) (holding use of the phone sufficient to establish interstate commerce).[8]

### 2. Whether the HWG Instruments are Securities

In its motion for summary judgment, the SEC argued that the HWG Instruments are either "notes" or "investment contracts," both of which are securities under the Securities Act.  Docket No. 27 at 11–18.  The magistrate judge determined that (i) the HWG Instruments are notes; (ii) the HWG Instruments are not exempt from registration with the SEC; and (iii) therefore, summary judgment is appropriate for the SEC.[9]

_____

[8] To the extent that Mr. Harkins's new interstate commerce argument is an objection to the Court's exercise of subject matter jurisdiction, as Mr. Harkins organized this argument within a section titled "Jurisdiction," Docket No. 41 at 2, his argument is unavailing.  The Securities Act is clear that "[t]he district courts of the United States . . . shall have jurisdiction of offenses and violations in this subchapter and under the rules and regulations promulgated by the [SEC]."  15 U.S.C. § 77v(a).  The Supreme Court has also held, regarding a provision of the Securities Exchange Act of 1934, that "to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits, which is a merits question.  Subject-matter jurisdiction, by contrast, 'refers to a tribunal's power to hear a case.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (quoting *Union Pac. R. Co. v. Locomotive Eng'rs*, 558 U.S. 67, 81 (2009)).  The Court therefore overrules this objection to the extent that Mr. Harkins did not waive it.

[9] Because the magistrate judge concluded that the HWG Instruments had to be registered because they are notes, the magistrate judge determined that it was not necessary to further determine whether the HWG Instruments are also investment

Docket No. 35 at 17.  The magistrate judge reached this conclusion after applying the test set forth in *Reves v. Ernst & Young*, 494 U.S. 56, 65–67 (1990), as stated in *SEC v. Thompson*, 732 F.3d 1151, 1158–59 (10th Cir. 2013).  Docket No. 35 at 10–11. Under the *Reves* "family resemblance test," a note is presumed to be a security, and this presumption may be rebutted only by showing that the note "bears a strong resemblance" to one of the categories of instruments that are not securities, including notes "secured by a mortgage on a home."  *Id.* at 10 (citing *Reves*, 494 U.S. at 65, 67). To determine whether an instrument bears a strong resemblance, a court considers four non-dispositive factors:

> (1) the motivations that would prompt a reasonable seller and buyer to enter into the transaction; (2) the plan of distribution of the instrument with an eye on whether it is an instrument in which there is common trading for speculation or investment; (3) the reasonable expectations of the investing public; and (4) whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.

*Thompson*, 732 F.3d at 1160 (quoting *Reves*, 494 U.S. at 66–67).  After considering Mr. Harkins's arguments to the contrary, the magistrate judge determined that the HWG Instruments do not bear a strong resemblance to a category of instruments that *Reves* held are not securities.  Docket No. 35 at 17.

Mr. Harkins raises a series of objections to the magistrate judge's determination that the HWG Instruments are notes.  First, he objects that the loan participations and the 6&25 investments "ARE within[] the category of 'non-security'" because of the "FACT that mortgages were behind the[m]."  Docket No. 41 at 8.  Mr. Harkins

contracts.  Docket No. 35 at 17 n.5.  Mr. Harkins does not object to this aspect of the recommendation.

continues, "[i]t SHOULD be clear that the mortgage securities behind these notes squarely place them INTO one of the categories deemed to be 'non-securities'" because, as the SEC recognizes, "the Loan Participations were 'secured by a lien on real property'" and "the '[6&25] investments were secured by real estate.'" *Id.* at 9 (quoting Docket No. 27 at 7, ¶ 16 and 8, ¶ 25).  Second, Mr. Harkins argues that mortgage holders had control and could foreclose and seize possession of the asset. *Id.* at 10.  Third, Mr. Harkins insists that the HWG Instruments are not notes because they had risk-reducing factors, as evidenced by the fact that "the Rosewood Property" sold for far more than the value of the encumbrances, and therefore there was sufficient risk reduction to make regulation under the Securities Act unnecessary.  *Id.* at 10–12.  Mr. Harkins does not make these arguments with regard to the corporate notes.

In response, the SEC insists that Mr. Harkins waived his first objection by not raising it in his response to the SEC's motion.  Docket No. 42 at 4.  The SEC also explains that courts routinely find that investments partially backed by mortgages are securities and cites residential and commercial mortgage-backed securities as examples.  *Id.* at 4–5.  To Mr. Harkins's second objection, that investors could foreclose and seize possession, the SEC argues that Mr. Harkins waived this argument, too, by failing to raise it in his response.  *Id.* at 9.  Finally, in reply to Mr. Harkins's third argument, the SEC explains that, simply because a single investment turned out to be profitable, it is not the case that the HWG Instruments were not securities.  *Id.* at 5.

As to Mr. Harkins first objection, that there were "mortgages behind" the loan participations and 6&25 investments, the SEC is not entirely correct that Mr. Harkins

12

failed to raise this argument in his response.  Mr. Harkins stated in his response that, with regard to the loan participations and 6&25 investments, "defendant structured real estate backed loans to fund its development business" and that his "activities were not of the issuance of securities."  Docket No. 32 at 1.  Therefore, Mr. Harkins stated, "[t]he claim that the [d]efendants did not do the paperwork, disclosures and registrations regarding the alleged sales of securities is a moot point."  *Id.*  While Mr. Harkins's response could have been clearer, because Mr. Harkins is proceeding *pro se*, the Court construes his response liberally, *Hall*, 935 F.2d at 1110, and finds that it was sufficiently raised so as not to be waived.  Mr. Harkins, however, does not make this argument with regard to the corporate notes.

Nevertheless, Mr. Harkins's argument fails on the merits.  It is not the case that all investments backed by a mortgage are categorically exempt from registration.  The SEC is correct that investments partially backed by mortgages are still securities that must be registered, and courts evaluate the sufficiency of registration statements issued for mortgage-backed securities.  *See, e.g.*, *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 113 (2d Cir. 2013) (holding fund plausibly stated a claim that registration statement and prospectus for mortgage-backed security contained material misstatements and omissions)*; In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 751 (S.D.N.Y. 2012) (considering whether Bear Stearns's mortgage-backed securities registration statements contained misrepresentations and omissions).  The Court therefore overrules this objection.

As to Mr. Harkins's second objection, that mortgage holders could foreclose on

the properties underlying their investments and that this means registration was not necessary, the Court finds that Mr. Harkins waived this argument.  This argument is nowhere to be found in Mr. Harkins's response to the SEC's motion, and Mr. Harkins is foreclosed from raising it for the first time in his objection to the recommendation. *Maurer*, 799 F. App'x at 614 n.1.  Even if Mr. Harkins had not waived this objection, however, the SEC is correct that Mr. Harkins's statements are merely conclusory allegations and that he provides no evidence that investors had any control over the underlying mortgage or the real estate securing their investments.  Docket No. 42 at 5. Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment.  *McVay v. Western Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987) (a party cannot establish a genuine issue of material fact with conclusory allegations); *Hall*, 935 F.2d at 1111, n. 5 (once the summary judgment "movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)); *Tillett v. Lujan*, 931 F.2d 636, 639 (10th Cir. 1991) (the nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every element challenged by the motion).

Mr. Harkins's final objection to this portion of the recommendation concerns the fourth of the *Reves* family resemblance test factors.  This factor is whether there is an alternative risk reduction that would make SEC regulation unnecessary.  *Thompson*, 732 F.3d at 1160 (quoting *Reves*, 494 U.S. at 66–67).  Mr. Harkins argues that, because the Rosewood property sold at a profit, the loan participations and 6&25

investments had risk-reducing factors.  Docket No. 41 at 10–12.  Again, Mr. Harkins does not raise this argument regarding the corporate notes.  Even if this is true, the SEC argues, "risk reducing factors are but one, non-dispositve factor in the test set forth in *Reves* . . . for whether an investment is a 'Note' and thus a security."  Docket No. 42 at 5.  The SEC also claims that "the sale of *one* park at a profit does not create any risk reducing factors for the investors in the other trailer parks for which [Mr.] Harkins sold investments on which he was unable to perform."  *Id.* at 6.

The Court agrees with the SEC.  Mr. Harkins has at best shown one *Reves* factor regarding one investment that weighs in his favor.  The Court finds that the evidence does not support Mr. Harkins on the other three *Reves* factors and that, considered as a whole, the *Reves* factors show that the HWG Instruments are securities.  The Court therefore overrules Mr. Harkins's objections that the HWG Instruments are not securities.

### 3. Whether Investors were Accredited and Registration was Excused

The magistrate judge also determined that defendants "marketed the HWG Instruments, by means of general solicitation, through mailing lists, finders, seminars, and HWG's public website" and that the HWG Instruments "were ultimately sold to multiple investors, at least some of whom were non-accredited individual investors." Docket No. 35 at 14.  Mr. Harkins objects to this determination.  He argues that the corporate notes were not offered to the general public, traded between investors, or generally advertised and, therefore, even if they were securities, registration was excused.  Docket No. 41 at 13–14.  Further, Mr. Harkins insists that he "relied on good

council [sic] to facilitate these subscriptions" and that investors "signed and therefore fully accepted [the HWG Instruments'] agreement[s]." *Id.* at 14.  He provides an example of an investor who he claims is accredited and who "fully vetted his placement, had full access to his attorney for their advice and input [and who] is an astute and wealthy man . . . fully able to manage his money." *Id.*

The SEC argues that Mr. Harkins waived this objection by failing to raise it response to its motion.  Docket No. 42 at 6.  The SEC also argues that the claim that one investor was accredited does not meet Mr. Harkins burden of establishing an exemption from the registration requirement.  *Id.*  While Mr. Harkins did not explicitly state that his investors were accredited in his response, he did insist that the HWG Instruments were not for common trading or speculation, that "[p]articipants made loans understanding a long term placement," and that "every lender was briefed on the 'illiquid' nature of their loan."  Docket No. 32 at 3.  He also stated in his response that the loans were "NOT sold by mailing lists, finders, etc.[,] as the SEC claims."  *Id.*  As stated above, however, Mr. Harkins provides no evidence for these claims.  Therefore, even assuming that Mr. Harkins did not waive this objection, he has failed to "make a showing necessary to establish that the note is *not* a security."  *Thompson*, 732 F.3d at 1161–62 (holding that once the movant puts forth evidence showing a note is a security, the burden is on the nonmoving party).  His conclusory arguments, without more, are insufficient to establish a genuine dispute of material fact.  *McVay*, 823 F.2d at 1398.  Furthermore, even if the one investor were accredited, Mr. Harkins has not established that other investors were too.  As the magistrate judge explained, these

investors unquestionably "have a legitimate need for protection by securities laws." Docket No. 35 at 14 (quoting *SEC v. Global Telecom Servs., LLC*, 325 F. Supp. 2d 94, 115 (D. Conn. 2004)); *accord Stoiber v. SEC*, 161 F.3d 745, 752 (D.C. Cir. 1998) (finding a security where notes were sold to "individuals, not sophisticated institutions"). In addition, while Mr. Harkins insists that some of the HWG Instruments were offered for "[t]he greater good of the company" and for "benefiting the company with which [investors] were already doing business" and that therefore the motivations of the buyer and seller "extended beyond 'primarily for profit,'" Docket No. 41 at 14, Mr. Harkins has not only provided no evidence for these claims, but he also failed to raise these arguments in response to the SEC's motion.  The Court therefore overrules this objection to the extent it was not waived.

### B.  Hartman Wright Group

As explained above, defendant HWG has failed to appear in this matter, and the SEC's well-pled allegations against it were thereby deemed admitted.  Docket No. 35 at 1 n.1.  Furthermore, HWG failed to object to the magistrate judge's recommendation. Because HWG has not objected to the magistrate judge's recommendation, the Court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers*, 927 F.2d at 1167; *see also Thomas*, 474 U.S. at 150 ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.").  The Court has reviewed the recommendation to satisfy itself that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b),

Advisory Committee Notes.  Based on this review, the Court has concluded that the recommendation is a correct application of the facts and the law with respect to HWG.

**IV.  CONCLUSION**

It is therefore

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 35] is **ACCEPTED**.  It is further

**ORDERED** that defendant Tytus W. Harkins's Objection to the Recommendation of United States Magistrate Judge [Docket No. 41] is **OVERRULED**.  It is further

**ORDERED** that SEC's Motion for Summary Judgment on Section 5 Claim [Docket No. 27] is **GRANTED**.

DATED March 15, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge